Michael A. Faillace [MF-8436]
MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------X

VALENTIN VIVAR CRUZ, BRANDON VENTURA GARCIA, and DIEGO RIOS, *individually and on behalf of others similarly situated,*

*Plaintiffs*,

-against-

4 EAST 46TH STREET LLC (d/b/a MOCHA LUX STEAKHOUSE BURGERS), 127 FOURTH AVENUE RESTAURANT LLC (d/b/a MOCHA RED STEAKHOUSE & MIXOLOGY BAR), NAFTALI ABENAIM and OFER BITON,

*Defendants.*

-----------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER 29 U.S.C. § 216(b) AND RULE 23 CLASS ACTION**

**ECF Case**

Plaintiffs Valentin Vivar Cruz, Brandon Ventura Garcia, and Diego Rios, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against 4 East 46th Street LLC (d/b/a Mocha Lux Steakhouse Burgers), 127 Fourth Avenue Restaurant LLC (d/b/a Mocha Red Steakhouse & Mixology bar) ("Defendant Corporations"), Naftali Abenaim and Ofer Biton  ("Individual Defendants"), (hereinafter defendants) allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs are former employees of defendants 4 East 46th Street LLC (d/b/a Mocha Lux Steakhouse Burgers), 127 Fourth Avenue Restaurant LLC (d/b/a Mocha Red Steakhouse & Mixology bar) Naftali Abenaim and Ofer Biton (collectively "Defendants").

2. Defendants own, operate, or control two Steakhouses/bars located at 4 E. 46th Street, New York, New York 10017 and 127 Fourth avenue, New York, New York 10003 under the names Mocha Lux Steakhouse Burgers and Mocha Red Steakhouse & Mixology bar respectively.

3. Upon information and belief, individual defendants Naftali Abenaim and Ofer Biton serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the restaurants as a joint or unified enterprise.

4. Plaintiffs were primarily employed as waiters, food runners and busboys , but they were required to spend a considerable part of their work day performing non-tipped, non-delivery duties, including but not limited to, various restaurant duties such as dishwashing, preparing desserts, inventorying desserts, sweeping and mopping, carrying down and stocking deliveries, packing deliveries for both delivery and to go orders, drying glasses and utensils , cleaning chairs and tables and cleaning the bathroom hereafter the "non-tipped, non-delivery duties").

5. At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

6. Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7. Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

8. Defendants employed and accounted for Plaintiffs as waiters, food runners and busboys in their payroll, but in actuality Plaintiffs' duties required greater or equal time spent in non-tipped, non-delivery duties.

9. Regardless, at all relevant times, Defendants paid Plaintiffs at the lowered tip-credited rate.

10. However, under *both the FLSA and NYLL*, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day. 12 N.Y. C.R.R. §146.

11. Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as waiters, busboys and food runners instead of as non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the tip-credit rate (which they still failed to do).

12. In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from Plaintiffs' and other tipped employees' wages.

13. Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

14. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work without providing the minimum wage and overtime compensation required by federal and state law and regulations.

15. Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

16. Plaintiffs seek certification of this action as a class action under Rule 23 and as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

18. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district. Defendants maintain their offices within this district, and Defendants operate a steak house located in this district. Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

*Plaintiffs*

19. Plaintiff Valentin Vivar Cruz ("Plaintiff Vivar" or "Mr. Vivar") is an adult individual residing in Bronx County, New York. Plaintiff Vivar was employed by Defendants from approximately September 2023 until on or about July 5, 2024 at Mocha Lux Steakhouse Burgers.

20. Plaintiff Brandon Ventura Garcia ("Plaintiff Ventura" or "Mr. Ventura") is an adult individual residing in Kings County, New York. Plaintiff Ventura was employed by Defendants from approximately December 31, 2023 until on or about July 18, 2024 and from approximately September 15, 2024 until on or about March 16, 2025 at Mocha Lux Steakhouse Burgers.

21. Plaintiff Diego Rios ("Plaintiff Rios" or "Mr. Rios") is an adult individual residing in Queens County, New York. Plaintiff Rios was employed by Defendants from approximately June 2021 until on or about June 2023 at Mocha Red Steakhouse & Mixology bar and from approximately July 2023 until on or about June 2024 at Mocha Lux Steakhouse Burgers.

*Defendants*

22. At all relevant times, Defendants owned, operated, or controlled two Steakhouses/bars located at 4 E. 46th Street, New York, New York 10017 and 127 Fourth avenue, New York, New York 10003 under the names "Mocha Lux Steakhouse Burgers" and "Mocha Red Steakhouse & Mixology bar" respectively.

23. Upon information and belief, 4 East 44th Street LLC New York (d/b/a Mocha Lux Steakhouse Burgers), is a domestic corporation organized and existing under the laws of the

State of New York. Upon information and belief, it maintains its principal place of business at 4 E. 44th St., New York, New York 10017.

24. Upon information and belief, 127 Fourth Avenue Restaurant LLC (d/b/a Mocha Red Steakhouse & Mixology bar) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintained its principal place of business at 127 Fourth Avenue, New York, New York 10003.

25. Defendant Naftali Abenaim is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Naftali Abenaim is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporations. Defendant Naftali Abenaim possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controls significant functions of Defendant Corporations. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

26. Defendant Ofer Biton is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Ofer Biton is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporations. Defendant Ofer Biton possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controls significant functions of Defendant Corporations. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

27. Defendants operate two Steakhouses/bars one of which is located in the Midtown East section of Manhattan and the other in the East Village section of Manhattan in New York City.

28. The individual defendants, Naftali Abenaim and Ofer Biton possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and control significant functions of Defendant Corporations.

29. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

30. Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

31. Defendants jointly employed Plaintiffs (and all similarly situated employees) and were Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

32. In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

33. Upon information and belief, individual defendants Naftali Abenaim and Ofer Biton operate the Defendant Corporations as either alter egos of themselves and/or fail to operate

the Defendant Corporations as entities legally separate and apart from themselves, by among other things:

a. failing to adhere to the corporate formalities necessary to operate the Defendant Corporations as corporations,

b. defectively forming or maintaining the corporate entities of the Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c. transferring assets and debts freely as between all Defendants,

d. operating the Defendant Corporations for their own benefit as the sole or majority shareholders,

e. operating the Defendant Corporations for their own benefit and maintaining control over them as closed corporations,

f. intermingling assets and debts of their own with the Defendant Corporations,

g. diminishing and/or transferring assets of the Defendant Corporations to avoid full liability as necessary to protect their own interests, and

h. other actions evincing a failure to adhere to the corporate form.

34. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

35. In each year from 2021 to 2025, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

36. In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis were goods produced outside of the State of New York.

*Individual Plaintiffs*

37. Plaintiffs are former employees of Defendants who were primarily employed as waiters, food runners, and busboys. However, they spent a considerable amount of time performing the non-tipped, non-delivery duties described above.

38. Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Valentin Vivar Cruz*

39. Plaintiff Vivar was employed by Defendants from approximately September 2023 until on or about July 5, 2024 at Mocha Lux Steakhouse Burgers.

40. Defendants ostensibly employed Plaintiff Vivar as a food runner.

41. However, Plaintiff Vivar was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

42. Although Plaintiff Vivar was ostensibly employed as a food runner, he spent over two hours of each day performing non-tipped work throughout his employment with Defendants.

43. Plaintiff Vivar regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

44. Plaintiff Vivar's work duties required neither discretion nor independent judgment.

45. From approximately September 2023 until on or about February 2024, Plaintiff Vivar worked from approximately 5:00 p.m. until on or about 11:00 p.m. or 12:00 a.m. five days

a week and from approximately 8:00 p.m. until on or about 1:00 a.m. one day a week (typically 36 to 41 hours per week).

46. From approximately March 2024 until on or about July 5, 2025, Plaintiff Vivar worked from approximately 5:00 p.m. until on or about 11:00 p.m. or 12:00 a.m. five days a week (typically 30 to 35 hours per week).

47. Throughout his employment with defendants, Plaintiff Vivar was paid his wages by company and personal checks.

48. From approximately September 2023 until on or about December 2023, Defendants paid Plaintiff Vivar $10 per hour.

49. From approximately January 2024 until on or about July 4, 2025, Defendants paid Plaintiff Vivar $10.65 per hour.

50. Plaintiff Vivar's pay did not vary even when he was required to stay late or work a longer day than his usual schedule.

51. In fact, Defendants frequently required Plaintiff Vivar to work until 12:00 a.m. when his shift was supposed to end at 11:00 p.m., and did not pay him for the extra time he worked.

52. Defendants never granted Plaintiff Vivar any breaks or meal periods of any kind.

53. Plaintiff Vivar was never notified by Defendants that his tips were being included as an offset for wages.

54. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Vivar's wages.

55. In addition, Defendants withheld a portion of the cash tips customers left for Plaintiff Vivar and shared a portion of his non-cash tips with a manager.

56. Although Plaintiff Vivar was required to keep track of his time, his checks did not reflect the actual hours he worked.

57. Defendants required Plaintiff Vivar to sign a document in order to receive his weekly pay.

58. Furthermore, Defendants did not pay Plaintiff Vivar for all the hours he worked; specifically, Defendants withheld the pay for at least 40 hours that Plaintiff Vivar had worked.

59. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Vivar regarding overtime and wages under the FLSA and NYLL.

60. Defendants did not give any notice to Plaintiff Vivar, in English and in Spanish (Plaintiff Vivar's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

61. As a result of Defendants' failure to provide Plaintiff Vivar with a Notice of Pay Rate or accurate Wage Statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

*Plaintiff Brandon Ventura Garcia*

62. Plaintiff Ventura was employed by Defendants from approximately December 31, 2023 until on or about July 18, 2024 and from approximately September 15, 2024 until on or about March 16, 2025 at Mocha Lux Steakhouse Burgers.

63. Defendants ostensibly employed Plaintiff Ventura as a busboy and a food runner.

64. However, Plaintiff Ventura was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

65. Although Plaintiff Ventura was ostensibly employed as a busboy and food runner, he spent over two hours of each day performing non-tipped work throughout his employment with Defendants.

66. Plaintiff Ventura regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

67. Plaintiff Ventura's work duties required neither discretion nor independent judgment.

68. From approximately December 31, 2023 until on or about July 18, 2024, Plaintiff Ventura worked from approximately 4:00 p.m. until on or about 12:00 a.m. five days a week (typically 40 hours per week).

69. From approximately September 15, 2024 until on or about January 2025, Plaintiff Ventura worked from approximately 11:00 a.m. until on or about 4:00 p.m. four days a week twice a month and five days a week twice a month; in addition, twice a month he worked from 11:00 a.m. until on or about 12:00 a.m. (typically 20 to 33 hours per week).

70. From approximately January 2025 until on or about March 2025, Plaintiff Ventura worked from approximately 11:00 a.m. until on or about 4:00 p.m. three days a week for three weeks, two days a week for two weeks and one day a week for two weeks (typically 5 to 15 hours per week).

71. Throughout his employment with Defendants, Plaintiff Ventura was paid his wages by check.

72. From approximately December 31, 2023 until on or about March 2025, Defendants paid Plaintiff Ventura $10 .65 per hour.

73. Plaintiff Ventura's pay did not vary even when he was required to stay late or work a longer day than his usual schedule.

74. In fact, Defendants frequently required Plaintiff Ventura to work an additional one to one and a half hours past his scheduled departure time and did not pay him for the extra time he worked.

75. Defendants only granted Plaintiff Ventura breaks when he worked double shift.

76. Plaintiff Ventura was never notified by Defendants that his tips were being included as an offset for wages.

77. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ventura's wages.

78. In addition, Defendants withheld a portion of the cash tips customers left for Plaintiff Ventura, and shared a portion of his non-cash tips with a manager.

79. Although Plaintiff Ventura was required to keep track of his time, his checks did not reflect the actual hours he worked.

80. Defendants required Plaintiff Ventura to sign a document in order to receive his weekly salary.

81. No notifications, either in the form of posted notices or other means, were given to Plaintiff Ventura regarding overtime and wages under the FLSA and NYLL.

82. Defendants did not give any notice to Plaintiff Ventura, in English and in Spanish (Plaintiff Ventura's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

83. As a result of Defendants' failure to provide Plaintiff Ventura with a Notice of Pay Rate or accurate Wage Statements with each payment of wages, he was prevented from: (i)

comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

84. Defendants required Plaintiff Ventura to purchase "tools of the trade" with his own funds—including 10 black dress pants, 18 black dress shirts, 15 black polo shirts and two pairs of black dress shoes.

*Plaintiff Diego Rios*

85. Plaintiff Rios was employed by Defendants from approximately June 2021 until on or about June 2023 at Mocha Red Steakhouse & Mixology bar and from approximately July 2023 until on or about June 2024 at Mocha Lux Steakhouse Burgers.

86. Defendants ostensibly employed Plaintiff Rios as a waiter.

87. However, Plaintiff Rios was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

88. Although Plaintiff Rios was ostensibly employed as a waiter, he spent over two hours of each day performing non-tipped work at Mocha Red Steakhouse & Mixology bar and over 5 hours per day at Mocha Lux Steakhouse Burgers.

89. Plaintiff Rios regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

90. Plaintiff Rios' work duties required neither discretion nor independent judgment.

91. From approximately June 2021 until on or about June 2023, Plaintiff Ventura worked from approximately 5:00 p.m. until on or about 12:00a.m. four days a week twice a month and five days a week twice a month (typically 28 to 35 hours per week).

92. From approximately July 2023 until on or about June 2024, Plaintiff Ventura worked from approximately 5:00 p.m. until on or about 12:00a.m. four days a week twice a month and five days a week twice a month (typically 28 to 35 hours per week).

93. Throughout his employment with Defendants, Plaintiff Rios was paid his wages by check.

94. From approximately July 2021 until on or about June 2024, Defendants paid Plaintiff Rios $10 per hour.

95. Plaintiff Rios' pay did not vary even when he was required to stay late or work a longer day than his usual schedule.

96. For example, Defendants required Plaintiff Rios to work an additional 15 to 30 minutes past his scheduled departure time once a week at Mocha Red Steakhouse & Mixology bar and did not pay him for the extra time he worked.

97. Plaintiff Rios was never notified by Defendants that his tips were being included as an offset for wages.

98. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Rios' wages.

99. In addition, Defendants shared with a manager a portion of all tips written in for Plaintiff Rios at both Mocha Red Steakhouse & Mixology bar and Mocha Lux Steakhouse Burgers.

100. No notifications, either in the form of posted notices or other means, were given to Plaintiff Rios regarding overtime and wages under the FLSA and NYLL.

101. Defendants did not give any notice to Plaintiff Rios, in English and in Spanish (Plaintiff Rios' primary language), of his rate of pay, employer's regular pay day, and such other

information as required by NYLL §195(1).

102. As a result of Defendants' failure to provide Plaintiff Rios with a Notice of Pay Rate or accurate Wage Statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

103. Defendants required Plaintiff Rios to purchase "tools of the trade" with his own funds—including 15 black dress pants, 15 black dress shirts, 15 black polo shirts and 6 pairs of black dress shoes.

*Defendants' General Employment Practices*

114. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, overtime compensation and spread of hours pay as required by federal and state laws.

115. Plaintiffs have been victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

116. Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

117. As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving waiters, food runners, and busboys of a portion of the tips earned during the course of employment.

118. Defendants unlawfully misappropriated charges purported to be gratuities received by Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

119. Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

120. At no time did Defendants inform Plaintiffs that they had reduced their hourly wage by a tip allowance.

121. Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

122. Defendants required Plaintiffs to perform general non-tipped restaurant tasks in addition to their primary duties as waiters, food runners, and busboys.

123. Plaintiffs were employed ostensibly as tipped employees by Defendants, although they spent several hours per day performing non-tipped duties.

124. These Plaintiffs were paid at a lowered incorrect tip-credited rate by Defendants. However, under state law, Defendants were not entitled to a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever was less). 12 N.Y. C.R.R. § 146-2.9.

125. Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

126. Plaintiffs' duties were not incidental to their occupation as waiters, food runners, and busboys, but instead constituted entirely unrelated general restaurant work with duties including the non-tipped duties described herein.

127. In violation of federal and state law, as discussed above, Defendants classified Plaintiffs as tipped employees and paid them at an incorrect tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

128. Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

129. Defendants failed to inform Plaintiffs that their tips would be credited towards the payment of the minimum wage.

130. Defendants failed to maintain a record of tips earned by Plaintiffs for the tipped work they made to customers.

131. All Plaintiffs were paid their wages by check.

132. Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

133. Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

134. Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated current and former waiters, food runners and busboys.

135. Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

136. Defendants failed to provide Plaintiffs and other employees with wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

137. Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

138. As a result of Defendants' failure to provide Plaintiffs and other employees a Notice of Pay Rate or accurate wage statements with each payment of their wages, Plaintiffs and other employees were prevented from: (i) comparing their rate of pay to their hours worked; (ii) realizing that they were underpaid; and (iii) advocating for themselves and/or taking appropriate action to obtain the payments due to them.

**FLSA COLLECTIVE ACTION CLAIMS**

139. Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants on or after the date that is three years before the filing of this Complaint (the "FLSA and Rule 23 Class Period"), as employees of Defendants (the "FLSA and Rule 23 Class ").

140. At all relevant times, Plaintiffs, and other members of the FLSA and Rule 23 Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions.

141. At all relevant times, Plaintiffs, and other members of the FLSA and Rule 23 Class who are and/or have been similarly situated, have been subject to Defendants' common practices, policies, programs, procedures, protocols, and plans of willfully failing and refusing to pay them the minimum wage and at a one and one-half times their regular rates for work in excess of forty (40) hours per workweek.

142. At all relevant times, Plaintiffs, and other members of the FLSA and Rule 23 Class who are and/or have been similarly situated, have been subject to Defendants' willful failure to keep records required by the FLSA.

143. The claims of Plaintiffs stated herein are similar to those of the other employees.

## FEDERAL RULE 23 CLASS ACTION ALLEGATIONS

144. Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

145. Plaintiffs bring their New York Labor Law minimum wage, overtime, spread-of-hours, wage deduction, and liquidated damages claims on behalf of all persons who are or were employed by Defendants in the State of New York, on or after the date that is six years before the

filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

146. The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

147. There are questions of law and fact common to the Class including:

a) What proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b) What were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding payment of wages for all hours worked;

c) What were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding payment of at least minimum wages for all hours worked;

d) Whether Defendants failed and/or refused to pay Plaintiffs the minimum wage and overtime at the premium rate within the meaning of the New York Labor Law;

e) Whether Defendants failed and/or refused to pay Plaintiffs "Spread of Hours" Pay;

f) Whether Defendants improperly deducted "shorts" from the Plaintiffs' wages;

g) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work; and

h) What are the common conditions of employment and in the workplace, such as recordkeeping, clock-in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

148. The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols, and plans alleged herein concerning non-payment of overtime, non-payment of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

149. The representative parties will fairly and adequately protect the interests of the Class and have no interests antagonistic to the class. The Named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

150. The common questions of law and fact predominate over questions affecting only individual members.

151. A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

152. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

153. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

154. At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA and Rule 23 Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

155. At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

156. Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

157. Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

158. Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

159. Plaintiffs (and the FLSA and Rule 23 Class members) were damaged in an amount to be determined at trial.

## <u>SECOND CAUSE OF ACTION</u>

## VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

160. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

161. Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA and Rule 23 Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

162. Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

163. Plaintiffs (and the FLSA and Rule 23 Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

164. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

165. At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

166. Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs (and the FLSA and Rule 23 Class members) less than the minimum wage.

167. Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members) the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

168. Plaintiffs (and the FLSA and Rule 23 Class members) were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS OF THE NEW YORK STATE LABOR LAW

169. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

170. Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs (and the FLSA and Rule 23

Class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

171. Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members) overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

172. Plaintiffs (and the FLSA and Rule 23 Class members) were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER OF THE NEW YORK COMMISSIONER OF LABOR

173. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

174. Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 Class members) one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

175. Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members) an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

176. Plaintiffs (and the FLSA and Rule 23 Class members) were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW

177. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

178. Defendants failed to provide Plaintiffs and the FLSA and Rule 23 Class members with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

179. As a result of Defendants' failure to furnish an accurate wage notice to Plaintiffs and the FLSA and Rule 23 Class members, Defendants violated the NYLL and/or applicable regulations thereunder, including, inter alia, NYLL § 195.

180. Defendants are liable to each Plaintiff and the FLSA and Rule 23 Class members in the amount of $5,000, together with costs and attorneys' fees.

## <u>SEVENTH CAUSE OF ACTION</u>

## VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW

181. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

182. With each payment of wages, Defendants failed to provide Plaintiffs and the FLSA and Rule 23 Class members with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or

rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

183. As a result of Defendants' failure to furnish accurate statements to Plaintiffs and the FLSA and Rule 23 Class members Defendants violated the NYLL and/or applicable regulations thereunder, including, inter alia, NYLL § 195.

184. Defendants are liable to each Plaintiff and the FLSA and Rule 23 Class members in the amount of $5,000, together with costs and attorneys' fees.

**EIGHTH CAUSE OF ACTION**

**(VIOLATION OF THE TIP WITHHOLDING PROVISIONS OF THE NEW YORK LABOR LAW)**

185. Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

186. Defendants unlawfully and without permission from Plaintiffs and the FLSA and Rule 23 Class members misappropriated and withheld gratuities paid by customers which should have been retained by Plaintiffs.

187. Defendants' action violated NYLL §196-d.

188. Defendants are liable to Plaintiffs and the FLSA and Rule 23 Class members in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**

**RECOVERY OF EQUIPMENT COSTS**

189. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

190. Defendants required Plaintiffs and the FLSA and Rule 23 Class members to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and

"tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

191. Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a) Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b) Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 Class members;

(c) Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 Class members;

(d) Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA and Rule 23 Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e) Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA and Rule 23 Class members;

(f) Awarding Plaintiffs and the FLSA and Rule 23 Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g) Awarding Plaintiffs and the FLSA and Rule 23 Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h) Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs (and the FLSA and Rule 23 Class members);

(i) Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs (and the FLSA and Rule 23 Class members);

(j) Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs (and the FLSA and Rule 23 Class members);

(k) Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' (and the FLSA and Rule 23 Class members') compensation, hours, wages and any deductions or credits taken against wages;

(l) Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs (and the FLSA and Rule 23 Class members);

(m) Awarding Plaintiffs (and the FLSA and Rule 23 Class members) damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(n) Awarding Plaintiffs (and the FLSA and Rule 23 Class members) damages for

Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o) Awarding Plaintiffs (and the FLSA and Rule 23 Class members) liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p) Awarding Plaintiffs and the FLSA and Rule 23 Class members pre-judgment and post-judgment interest as applicable;

(q) Awarding Plaintiffs and the FLSA and Rule 23 Class members the expenses incurred in this action, including costs and attorneys' fees;

(r) Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s) All such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
October 28, 2025

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:

/s/ Michael Faillace
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

michael@faillacelaw.com

September 22, 2025

BY HAND

TO: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre: Valentin Vivar

Legal Representative / Abogado: Michael Faillace & Associates, P.C.

Signature / Firma: ______________________

Date / Fecha: September 22, 2025

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620


October 17, 2025

BY HAND

TO: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre: DIEGO RIOS

Legal Representative / Abogado: Michael Faillace & Associates P.C.

Signature / Firma: ______________________

Date / Fecha: Oct 17, 2025

Michael Faillace & Associates, P.C.
Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

October 17, 2025

BY HAND

TO: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre: Brandon Ventura Garcia

Legal Representative / Abogado: Michael Faillace & Associates P.C.

Signature / Firma: ______________________

Date / Fecha: Oct 17, 2025